

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-4-2005

# Cuchara v. Gai Tronics Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2268

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Cuchara v. Gai Tronics Corp" (2005). *2005 Decisions.* Paper 1251.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1251

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-2268
_____


STEPHEN WILLIAM CUCHARA, CPA;
RONALEEN CUCHARA, R.N., h/w,

Appellants,

v.

GAI-TRONICS CORPORATION; HUBBELL INCORPORATED


_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 03-cv-06573)
District Judge:  The Honorable Franklin S. Van Antwerpen


_____


Submitted Under Third Circuit LAR 34.1(a)
March 11, 2005


Before: NYGAARD, McKEE, and RENDELL, Circuit Judges.



(Filed : May 4, 2005)


_____

NYGAARD, <u>Circuit</u> <u>Judge</u>.

Appellants Stephen William Cuchara ("Cuchara") and his wife Ronaleen appeal from the District Court's grant of a motion to dismiss in favor of Appellees Gai-Tronics Corporation and Hubbell Incorporated. We have jurisdiction pursuant to 28 U.S.C. § 1291 and will affirm.

## I.

Cuchara was diagnosed with the neuromuscular disorder Guillian Barre Syndrome in 1971. The disorder causes him to suffer from numbness, tingling, muscle pain, and fatigue. Appellees were aware of Cuchara's medical condition when they hired him on January 7, 2002 to work as a Certified Public Accountant at Gai-Tronics. Shortly after Cuchara began working at Gai-Tronics, he complained to his supervisors that his long hours exacerbated his disability. It does not appear that Gai-Tronics took any steps to address Cuchara's concerns. On several other occasions during the course of his employment, Cuchara complained that his workload was having a deleterious effect on his health, and as a result he sought various accommodations. Each of his requests went unfulfilled.

On December 10, 2002, Appellees notified Cuchara that he would be fired. Appellees offered him a severance package that consisted of: (1) four week's salary; (2)

two week's of vacation pay; (3) an option for continuation of medical and dental health benefits through January 2003; and (4) the potential to continue COBRA coverage for an additional seventeen months after January 2003. In exchange for the severance package, however, Appellees required Cuchara to sign an Agreement and General Release ("Release") waiving all existing claims against Appellees, including but not limited to any claims under Title VII, the Americans with Disabilities Act ("ADA"), the Pennsylvania Human Relations Act ("PHRA), the Employee Retirement Income Security Act ("ERISA"), and the common law of any state. The Release provided Cuchara a twenty-one day period to consider whether to sign and advised him to consult an attorney before signing. (App. at 65a). Specifically, it noted in capital letters on the signature page: "EMPLOYEE HAS BEEN ADVISED THAT HE HAS AT LEAST TWENTY-ONE (21) CALENDAR DAYS TO CONSIDER THIS AGREEMENT AND GENERAL RELEASE AND HAS BEEN ADVISED IN WRITING TO CONSULT WITH AN ATTORNEY PRIOR TO EXECUTION OF THIS AGREEMENT AND GENERAL RELEASE." (Id.). Cuchara signed the Release on December 31, 2002, twenty-one days after receiving it, apparently without consulting an attorney. In addition, although the precise date is unclear, at some point more than seven days after he signed, Cuchara executed a second document admitting that he signed the Release, had been advised to retain counsel, and did not wish to revoke the Release.

3

On December 4, 2003, Appellants filed the present action against Appellees, alleging violations of Title VII, the ADA, the PHRA, and ERISA. The Complaint also alleged state law claims for breach of the Release, fraudulent inducement, and loss of consortium on behalf of Ronaleen Cuchara. Appellees filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The District Court granted that motion and this appeal followed.

II.

We exercise plenary review over a district court's grant of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Storey v. Burns Int'l Sec. Sys.*, 390 F.3d 760, 762 (3d Cir. 2004). A 12(b)(6) motion to dismiss "may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief." *Oatway v. American Int'l Group, Inc.*, 325 F.3d 184, 187 (3d Cir. 2003).

III.

The District Court granted the motion to dismiss because it held that the Release, signed by Cuchara, barred all his claims against Appellees. Cuchara disagrees. He first argues that because he did not knowingly and willfully sign the Release, it is invalid. Next, he contends that the Release does not preclude his claims because Appellees are in breach. Finally, Cuchara argues, the Release is invalid because

4

Appellees fraudulently induced him to sign. We find each of these arguments unpersuasive for the reasons explained below.

A.

Employees may waive employment claims against their employers so long as the waiver is made "knowingly and willfully." *Coventry v. United States Steel Corp.*, 856 F.2d 514, 522 (3d Cir. 1988) (quotation omitted); *see Alexander v. Gardner-Denver Co.*, 515 U.S. 36, 52 n.15 (1974) (holding that an employee may waive Title VII claims if the waiver is "voluntary and knowing"). To determine whether such a purported release is valid, we use a totality of the circumstances test. *Coventry*, 856 F.2d at 522–23. Among the factors we consider are:

> (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether plaintiff knew or should have known his rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received the benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

*Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 451 (3d Cir. 1988). We may also consider "whether there is evidence of fraud or undue influence, or whether enforcement of the agreement would be against the public interest." *W.B. v. Matula*, 67 F.3d 484, 497 (3d Cir. 1995) (citing *Coventry*, 856 F.2d at 522–23).

5

Examination of these factors reveals that Cuchara's waiver was knowing and willful. The language of the Release was clear and specific. Under the heading "General Release of Claims" it states that the employee "releases and forever discharges Employer . . . of and from any and all claims, known and unknown, which the Employer has or may have against Employer as of the date of the execution of this Agreement and General Release." (App. at 63a). It then contains a bulleted list of the claims waived, which includes each of the claims brought by Cuchara. Although Cuchara is not an attorney, he is an educated professional and there is no evidence that he was unable to comprehend the language of the Release or the implication of waiving his claims. Cuchara concedes that in exchange for waiving these claims, he received compensation to which he was not otherwise entitled: four week's salary.

Cuchara was not rushed into signing the Release. He was given twenty-one days. Moreover, we find particularly significant the fact that Cuchara was repeatedly advised in writing—in the Release and in a separate letter from Appellees—to obtain the services of counsel. Unfortunately, he appears to have disregarded this advice. Had he actually sought the advice of an attorney Cuchara very well may not have signed the Release, which does not provide him with much compensation in exchange for the release of several potentially meritorious claim. Nevertheless, he had the opportunity to obtain counsel and chose not to do so, and we hold that the totality of the circumstances

6

demonstrate that Cuchara knowingly and willfully waived his claims by signing the Release.

We do not agree with Cuchara that there is sufficient evidence of undue influence to compel a contrary conclusion. Under Pennsylvania law, absent a threat of actual bodily harm, there can be no claim of duress "where the contracting party is free to consult with counsel." *Carrier v. William Penn Broad. Co*., 233 A.2d 519, 521 (1967) (quotation omitted). Cuchara not only had the opportunity to obtain counsel, Appellees twice explicitly advised him to hire an attorney. Because Cuchara has not alleged any threats of bodily harm by Appellees, he cannot prove duress under these facts.

Nor can Cuchara demonstrate fraud. Cuchara argues that he believed he would receive Long Term Disability ("LTD") benefits as part of the COBRA benefits clause under the Release. He did not receive LTD. Thus, he contends, there is evidence of fraud. Cuchara's argument is undercut, however, by the fact that he knew he was not entitled to COBRA benefits as a matter of law because he had no medical or dental coverage. By extension, therefore, he should have known that he was not entitled to LTD through COBRA because he was not entitled to COBRA benefits in the first place. To the extent Cuchara argues that he expected to receive LTD in lieu of COBRA, that argument is unpersuasive. The Release contains a reference to COBRA but no references to LTD. Thus, there is insufficient evidence to demonstrate that Appellees defrauded Cuchara into believing he would receive a benefit that he has not received. That his

7

assumptions about the consideration in the Release were mistaken is reason enough why he should have hired an attorney. It is not grounds to invalidate the Release. We hold that under the totality of the circumstances test Cuchara signed the Release knowingly and willfully and that it validly waived his federal claims.[1]

## B.

Cuchara argues that he may circumvent the Release and assert his claims because Appellees are in breach. He contends that Appellees failed to provide him with all the consideration provided for by the Release—namely, LTD and COBRA benefits. We disagree. The Release provides for payment of COBRA benefits only "if Employee elects to continue medical and dental coverage . . . in accordance with the continuation requirements of COBRA." (App. at 62a). Cuchara's entitlement to continuation of COBRA benefits was conditioned on his continuation of medical and dental coverage. Having elected LTD instead of medical and dental coverage, Cuchara had no medical or dental coverage to continue and the condition precedent to payment of COBRA benefits has not occurred. Moreover, at least one other Circuit has held that election of LTD benefits does not invoke the protections of COBRA, *see Austell v. Raymond James &*

---

1. Cuchara's state law claims are also waived. Under Pennsylvania law, even an imprudent release is valid absent fraud, accident, or mutual mistake. *Taylor v. Solberg,* 778 A.2d 664, 667–68 (2001) (citations omitted). Cuchara may not have made a wise decision by signing the Release, but that alone does not save his claims from waiver. Thus, the state law claims—including Ronaleen's derivative loss of consortium claim—are waived.

*Assocs., Inc*. (4th Cir. 1997), and we decline to hold otherwise.  Therefore, Appellees are not in breach.

C.

Cuchara's final argument is that the Release is invalid because he was fraudulently induced into signing.  Again, we disagree.  Under Pennsylvania law, an individual bringing a claim for fraudulent inducement "must either return [the] consideration or abandon the claim."  *Allied Erecting & Dismantling Co. v. USX Corp*, 249 F.3d 191, 199 (3d Cir. 2001).  It is undisputed that Cuchara has not returned the four week's salary he received under the Release.  Nevertheless, Cuchara argues he should be permitted to maintain his fraudulent inducement claim under the exception set forth in *Greenan v. Ernst*, 143 A.2d 32 (Pa. 1957).  Under the *Greenan* exception, a plaintiff may pursue a fraudulent inducement claim while retaining the consideration if the plaintiff is in an "insecure financial condition."  *Id*. at 34.  We have held, however, that this exception is a rare one, to be applied only in cases in equity.  *Allied Erecting & Dismantling Co*., 249 F.3d at 200.  Because this is not such a case, Cuchara may not invoke the *Greenan* exception.  His failure to return the four week's salary, therefore, dooms his fraudulent inducement claim.  In any event, Cuchara cannot prove each element of a fraudulent inducement claim.

9

IV.

We hold that Cuchara knowingly and voluntarily signed the Release. Similarly, we hold that Appellees neither breached the Release nor fraudulently induced Cuchara into signing. Accordingly, the Release precludes Cuchara from asserting his claims against Appellees. We affirm the District Court's grant of the motion to dismiss.